May it please the Court. My name is Nicholas Miranda and I represent Appellant M.P. I'd like to reserve two minutes for rebuttal if I could. The Anchorage School District violated the Individuals with Disability Education Act when it ignored the affirmative obligation that it had to M.P., a child with autism, to provide him with a free, appropriate education tailored to his current needs. The school district's substantive violation is established under both of the alternative frameworks set forth by this Court. First, M.P. was denied a free, appropriate public education because he failed to make progress towards the goals in his IEP and indeed regressed. Second, alternatively and independently, M.P. was denied a free, appropriate public education because his outdated IEP was not reasonably calculated to provide him with a meaningful educational benefit in 2008. As a result of these, as well as the school district's procedural violations... His IEP was 2006, right? That's correct, Your Honor. And that's the last IEP that's in place? That's correct, Your Honor, during this period of time. I just want to make sure I understand the procedure, because it's a little odd. So the parents filed for due process for 2007, the next year. They are not half. 2007, right? The parents filed for due process? This case concerns the parents filing for due process for the school year. It covers part of school year 2007-2008 and 2008-2009, but it only covers the calendar year of 2008. But 2008, but his program was based on the 2006 IEP. Yes, Your Honor. From when he was in the second grade. Yes, Your Honor. Is that correct? Yes, Your Honor. And during the periods of time at issue here, he was in the third grade at Denali and then... He did the third grade. That's correct, Your Honor. His year at Denali was the second time he was in the third grade. He was at Denali and then Kincaid for his... Oh, Kincaid, that's right. They moved him to Kincaid. Yes, Your Honor. Right. Right. Did you hear my question? Excuse me? Did you hear my question? I'm sorry, could you repeat your question? The question is, they filed for due process in 2007. Yes, Your Honor. Okay. And then the case lags a bit. So the case actually tied before the hearing officer was not the case as stated in the complaint. It was not a subsequent complaint, right? Yes. No, Your Honor. There was an amended complaint. It started out, the filings at issue here began in September 2008. That was the first time they filed. They filed four separate due process complaints. There was what was called the 09-06 complaint. The 09-07, the 09-08, and the 09-09. So which was the complaint which was the basis of the trial that was actually conducted before the hearing officer? The 09-08. And that was the complaint that, by stipulation of the parties, covered the entire calendar year of 2008, from January 2008 to December 2008. And so it covered the events that happened in the year after the filing of the original complaint, the attempt to a second IEP in 2008. There was a IEP process started. Yes, Your Honor. It does cover that period of time. The IEP in place, the complaint that is at issue here is the complaint that was filed in August of 2008. The initial period in time of the complaint was January to August 2008. Is that an excerpt? Yes, Your Honor, it is. Can you tell me where? The original complaint appears at ER 228. Not the original complaint. The one that was actually the basis of the trial. That is this. It was just amended. It wasn't amended in form. It was amended through conversations and through the pre-hearing process. But the only amendation was to set the period of time. This is a lot of double talk. I'm sorry, Your Honor. The original complaint. Yes. You know, when you say it was amended, was there amendments? Were there actual pieces of paper that come in? No, Your Honor. I'm sorry. I'm sorry if I'm being unclear. The original complaint at issue here was filed in August 2008 and dealt with the period of time of 2008. There was no complaint. And where is that complaint? That complaint is at ER 228. There was not a 2007 complaint. That's correct, Your Honor. There was no 2007 complaint. That's correct, Your Honor. Okay. I'm sorry. And where is that? I'm sorry. Where did you say that complaint is? ER 228, Your Honor. ER 228. Yes, Your Honor. And that was the basis of the original trial? Yes, Your Honor. That was the basis of the original trial. But the hearing officer, the original hearing officer was assigned to bifurcated that complaint and said that the only issues at place would be the issues relating to calendar year 2008. That's what I was trying to say that I believe I was unclear about, Your Honor. Because the original complaint contained issues related to 2007 and 2008, even though it was filed in 2008. And there was not a 2007 complaint? No, Your Honor. Okay. There was not a 2007 complaint at issue here at all. I didn't say at issue. Was there a 2007 complaint? Oh, I'm sorry. I've repeatedly misunderstood you. Yes, there was a 2007 complaint that dealt with issues related to writing in 2007. I'm sorry. I've completely misunderstood you, Your Honor. Yes. But the only ---- How could I have been more clear? It's my fault, Your Honor. Okay. So let's start over. Let's go back. Yes. There was a complaint in 2007. Yes or no? Yes. Where is that? That's not in the record, Your Honor. Okay. And then there was a later complaint in 2008? Yes, Your Honor. And that was an amendment of the 2000? No, Your Honor. Two totally different things. So the one in 2007 wasn't really an issue at all? Because they ---- I'm asking, was that issue in the trial? Correct. Okay. And where is the 2008 complaint? It's at ER 228, Your Honor. ER 228. Okay. And that covered the period up to ---- up through that attempted IEP process? Yes, Your Honor. It covers January 2008. Did it raise the procedural issues? Your Honor, no. The complaint didn't? No, Your Honor. The complaint did not explicitly raise the procedural issues. However, Your Honor ---- I'm sorry. What word does the word explicitly use? I'm sorry. No, Your Honor. The complaint did not raise the procedural issues. The reason that I used the word explicitly is because the proceedings ---- because the IEP process does not expect parents to frame the issues in turn or to frame the legal theories of the case at the outset. Rather, the scope of the due process hearing is defined by 1415B7, which is the initial complaint notice, that only asks for a general description of the nature of the problem. That's why I used explicitly. But you're right, Your Honor. Was it alluded to implicitly? I mean, was there something about the procedural issues in the complaint here? No, Your Honor. We do not make the claim that there was. Okay. So explicit or implicit, it just wasn't there. That's right, Your Honor. But this Court ---- So you just threw in the word explicit for no reason at all? Your ---- I'm sorry, Your Honor. That was my mistake again. Okay. So how then do we consider the procedural issue? Why isn't this Court right in saying that the procedural issue or the school district right in saying the school district ---- the procedural issue isn't exhausted? Your Honor, this Court addressed the same ---- a similar factual circumstance in the loss for Hinnis in a persuasive decision. And in that circumstance found that the issue was similarly exhausted and not waived. Because it was considered, actually considered by the hearing officer. No, Your Honor. It was not considered by the hearing officer in that case. In loss for Hinnis, the hearing officer explicitly did not consider it. It was considered by the district court, as it was similarly considered by the district court on the merits, albeit erroneously, in this case. However, Your Honor, even if you believe that the procedural issues were waived, the MP has shown a violation of the substantive provisions of the IDEA under either of the two ---- Okay. Let me ---- before you go there, didn't the IJ essentially address the procedural issues? Yes, Your Honor. In effect ---- I mean, didn't in determining, as I understand what happened here, is the parents essentially prevailed in front of the administrative hearing officer, correct? Yes, Your Honor. When it gets to district court, the district court changes the outcome. Yes, Your Honor. In kind of an odd way, I thought. Yes, Your Honor. Right? Yes, Your Honor. Now, when the hearing officer rendered his decision, in her discussion of the issues regarding the IEP and the MP's performance under the 2006 IEP, she makes repeated note of the fact that they were assessing this child for his performance in third grade work based upon a 2000 ---- based upon an IEP that was prepared for the second grade. Yes, Your Honor. And she identifies that as a major flaw. Yes, Your Honor. Isn't that right? Yes, Your Honor. Now, nobody really disputed that at the hearing. Is that correct? I mean, the fact that there were only ---- that everybody was proceeding on a 2006 IEP. No one disputed that, Your Honor. That's correct.  What was the purpose of the IEP? The ---- not necessarily to update the IEP, but not to ---- I'm sorry. Yes. The district court had the obligation to update the IEP under 1414 D2A, which states that the school district must have, in effect, an IEP at the beginning of every school year that contains certain requirements or certain items. And one of those items contained is an accurate statement of the present levels of educational performance and achievable annual goals. Now, I thought one of the problems was is that as the district and the parents had their disagreements about the educational opportunities being provided to MP, is that the parents ultimately at some point asked to have the MP remain in a particular educational setting or placement. Is that correct? Yes, Your Honor. With respect to certain aspects of the 2006 IEP. Yes, Your Honor. Stay put. Yes, Your Honor. So why didn't that excuse the district then from even having to modify the IEP at all? Your Honor, because stay put under 1415 J, the so-called stay put provision, only precludes changes to a child's educational placement. And this Court is clear in NDV Hawaii that educational placement is not synonymous with services nor IEP. Educational placement refers only to the location in which the child receives the educational services. In other words, whether it's regular education or special education or at home. So the school district still had the obligation to revise those areas of the IEP that do not directly affect educational placement. Didn't they undertake to do that, though? Wasn't there a six-hour meeting in February where the parents were invited to come and just didn't respond at all? Yes, Your Honor. There was a six-hour meeting in February where they drafted a partial, what they called a partial draft IEP. Why didn't the parents participate? As I read the record, they got advance notice. There were repeated notices sent to them by e-mail. They responded once by e-mail suggesting some change in the IEP, but then they didn't show up, even though the record shows that they, one of the parents at least, was at the school that day and didn't show up. Your Honor, there's dispute in the record as to whether or not they received notice and what the content of the notice is. But the more important issue is that the parents did attempt to participate. The statute provides not just for participation at the meeting, but for participation in different ways. And the school district sent home a copy of the partial draft IEP, and the parents sent back over 20 pages of substantive comments and suggestions, changes to the goals on March 4, 2008. That was after the meeting took place? Yes. Is there anything in the record as to why they didn't show up and participate at the meeting? I know they sent one e-mail suggesting one discrete change, but why didn't they come and participate in the meeting to discuss overall revisions to the IEP? Your Honor, the parents were not notified that the nature of the meeting was an IEP meeting. It was put down as a calendar with a box check that said 1.5-hour meeting, which is of a different tenor than the 6-hour meeting. But I think that the crucial thing here is that the parents did attempt to participate before the IEP was finalized. They sent afterwards on March 4, before, while the IEP was still being considered, they sent over 20 pages of detailed comments that addressed every goal, that addressed the present levels of educational performance. These were detailed, thoughtful comments that were not cursory and were very substantive on each of the areas and each of the individual goals. And the school district responded to that three days later and said, as a result of what you are saying, as a result of our areas of disagreement, we are no longer going to consider these comments. We are going to keep the 2006 IEP in place in its entirety until all litigation is resolved. So in other words, the school district did put forth suggestions, which, yes, the parents were not there. The parents then made tons and tons of substantive comments as to particular changes, areas to work on, that kind of thing. And the school district responded and said, we're not going to consider your changes. We're not going to consider anything. And we're not putting a new IEP in place. We're going to keep your child under the two-year-old outdated and obsolete IEP. My words, not theirs. And that 2006 IEP is going to stay in place until the close of litigation. I don't think they have any choice about that, right? I mean, they have a state put. There's not that much of the school. I mean, the school district has to forge ahead with a new IEP. And if they can't get agreement with the parents, they have to file for due process, right? No, Your Honor. They can implement the aspects of the IEP that are not directly related to placement. And there are several areas that are not directly related to placement. In other words, they could have changed services. They could have changed the curriculum, adopted a new math. You see a curriculum. They could have changed the reading curriculum to phonics. They could have added a TA in the classroom. They could have increased the- Let's play this out. Let's say they had changed the curriculum and adopted a, you know, the parents were not happy with the draft IEP that they got in the mail, right, that they resolved at the meeting. And the school district said, well, they're not happy with it. We're going to implement it anyway. And so the child was getting certain remedial classes, and the school district says we're now going to implement the new IEP and give him different remedial classes. You don't think they would be violating the stay put at that point? If they did not change placement, Your Honor, no, they would not be violating the stay put, because the stay put, by its expressed terms, only relates to educational placement. You're answering a question with an if. Oh. It doesn't answer my question. I asked you a question. You've got to sort of listen to the question and answer the question. I gave you a hypothetical. If you want more detail, I can give you more detail, but tell me if this happens. No, Your Honor. You're assuming away the answer. Sorry, Your Honor. So did you hear what I asked? Yes, Your Honor. Okay. And the answer is? The answer is no. I do not think that that would violate the stay put. I'm surprised to hear that, but that's your position. That's your position. I'm really surprised to hear that. However, Your Honor, if I can elaborate a little bit, it would only change the stay put if it changed the educational placement. In other words, if it were a change of him receiving the services, instead of receiving them in regular education classroom, he were being shipped off to receive them in a special education classroom. That would change. That would be a change in placement. What if they say, look, he's had enough remedial math, but he needs more remedial English. So we have now assessed him, and we think he no longer needs math tutoring. He now needs remedial English, and they do that. You don't think that would be a violation of the stay put? Now, of course, if the parents consent, it's not a violation because, you know, parents can consent to anything, and if there's agreement, there's no violation. But let's say the parents don't consent. You don't think they would be able to go in and get a, excuse me, get an injunction against stopping the math and commencing the English tutoring? No, Your Honor, I don't believe it would violate stay put. They could challenge it as not providing a faith, of course, and try to get an injunction on that ground saying, for example, that the changes were not related to what he needed. So they could challenge it under the method set forth to challenge anything by the statute. But in the meantime, the school would be going forward with this. This is your position. Yes, Your Honor. You're way over your time. Unless colleagues have a question. There are no further questions, Your Honor. Thank you, Your Honors. Brad Owens here on behalf of the Anchorage School District from Anchorage. Let me address the stay put issue. First off, I think that the briefing that's been provided is sufficient to decide, but I did want to respond to a couple of questions asked by the panel. The argument made by the parents here on stay put essentially ignores and negates 25 years of stay put litigation and decisional authority in this circuit and in other circuits. I mean, stay put as it's understood. Instead of disagreeing with them, why don't you put in a positive way what you think is the situation. Starting maybe with the hypothetical I asked, and let's say the school district decides the kid no longer needs math training, remedial math but needs remedial English, and they make that change. In your view, that would be a violation of the stay put? If that kind of a change occurred, a parent could request stay put if one had not been requested, and that is in fact what happened in 2007 in the due process hearing complaint filed before the one that's now before the court. That's when stay put was first invoked by the parents. The school district in February of 2008 had an IEP meeting, fully considered all of the current circumstances and all of the current testing on the student, and proposed an IEP that they believed was responsive to his current individual needs and a program that would meet those individual needs. This is the one that the parents did not attend? Yes. In fact, it was the meeting where the parents didn't attend, but the mother showed up at the school and the meeting was interrupted and the principal went out, one of the people from the IEP meeting, it may have been somebody other than the principal, and actually asked the mother, you know, do you want to come in? We're having a meeting. I just want to make sure we're talking about the same IEP. Yes. This is the one created as a result of that meeting, which was then sent to the parents by email or by mail or something, right? Right. Yes, it was actually sent. I'm sorry? Go ahead. It was sent and received by the parents, yes. It was sent to and received by the parents. Right, and then they made comments. We know that they received it because they made a bunch of comments, and at that point the school said no. Well, the comments that were received from the parents were many of the areas of the IEP that had been drafted in this February 2008 meeting that were circled and in dark ink written, stay put, stay put, stay put. I mean, they basically rejected virtually all of the proposed IEP, and that's the circumstances that I think your honors raised, is the school district has a plan that it thinks is more responsive to the needs of the student, and it proposes to make these changes. It has no ability with stay put in effect to make any changes unless there's an agreement with the parents. The parents could have written back and said we agree with these parts but not these parts, and the district at that point could have assessed is it appropriate. In any event, there was a disagreement. Correct. And the next thing that happens is you go to hearing. Is that right? So you couldn't reach agreement. Right. So the next thing you go to hearing before the hearing office or the independent hearing office, right? That's correct. Now, do you agree that the complaint that's at ER 228 is the operative complaint for that hearing? I don't agree that that's the operative complaint. There was the parent submitted four or five different due process, separate due process complaints. That was one of them, and what's at 228 is the original complaint. It's September 22, 2008, so we know it's not the original complaint because the original complaint was filed at some point in 2007. No. You were talking about two different things. The 2007 complaint where stay put was first invoked was an entirely different due process hearing. It was an entirely different due process complaint. I'm sorry. You're disagreeing with my numbering. You think that that is a different number. So that's not a first. This is A. That was when stay put was first invoked by the parents. So that was a zero complaint? I said that's the original complaint. It came first in time, right? It came earlier in time than this one? It did. Okay. So why aren't we calling that the first? Is there something about the numbering system? I think no. Why isn't that the original? Was there some other original complaint? Well, I understood the court's question to be the complaint that was involved in this due process hearing. Yeah, I'm asking, this is the complaint that was then became the subject of the hearing, right? There were earlier complaints, one of which was in 2007. I guess what I'm saying, Your Honor, is that complaint was then modified during the due process pre-hearing process. Which, when you say that. The complaint that you have at ER 228, that was the initial complaint filed. Then the parent went through an interlineated. Wait a second. This is the initial complaint dealing with that here? The current matter. Okay. Right. The parent then, during the due process pre-hearing, went through an interlineated and modified that complaint by removing the majority of it and saying, all that's at issue is whether or not he made educational progress. And where is that? I don't know where that is. I don't have a citation in the record, Your Honor. I thought that was only recorded by an oral agreement. No. Was there actual interlineation on a document that was then made part of the record? That's correct, Your Honor. And I'd be happy to supplement the record to provide that citation. But there was interlineations made on 228, on ER 228, that modified the complaint significantly. And that was then reflected in. I can't decide this case unless. I mean, one of the district court's problems was that they thought they didn't give notice of the procedural violations. This complaint seems to raise procedural issues right on the first page. And those were actually struck from that complaint. That was the modification that was made before the matter began. We don't have that? It is in the record, Your Honor. It is in the record. It's not in the excerpt of record that was submitted, but it is in the record. Was it provided to the district court? It absolutely was. It was provided to the administrative. These are your excerpts, right? No. Those excerpts are from the appellate, Your Honor. Eugenia Sleeper? I'm not sure what you're looking at, Your Honor. That's an excerpt of record volume something. It has Eugenia Sleeper's name on it. Jermaine Donegan and Owens, PC. I believe that certainly is from our office. Is that volume? This is volume. It says 3, but then it has the volume number 3 blanked out. I guess it says volume 3 there. It's my understanding, Your Honor, and I apologize if I'm in error, that at least the first two volumes of the excerpt of record were prepared by the district court. Yes. They have different names. This one has your name on it or your colleague's name on it, and it contains this complaint. I don't quite understand why you all put in stuff that's irrelevant and leave out stuff that's relevant. I guess to the extent that the interlineated, the modified complaint, isn't in the excerpt of record, I guess what I'm saying is that it is part of the administrative record that was before the district court. It was a document that was provided both to the hearing officer and to the district court. And it was left out of the excerpts because? Apparently. I wasn't even aware from the reading I did that there was an interlineated document. There is. There is. And that was the basis upon which? It's difficult. You raise these things. You know, you don't bother to put them into the excerpts. You don't put it in your brief. You stand up at the oral argument here in the Court of Appeals and make a presentation like that, which is a complete loss. We don't know what the document looks like. We don't know where it is. Why on earth? I mean, if you're discussing, you know, this record discusses the question of whether or not this was properly raised below and you make an argument of exhaustion, why don't you include the document in question? I apologize for not having it in the excerpt, Your Honor, but it is part of the administrative record before the district court. Okay. And what, in your view, does it provide? I'm sorry? And what does it provide? It provides a much narrowing, a much more narrow complaint. Mostly what it narrows is it removes all the procedural claims and it identifies simply, was there educational benefit provided to the student during the 2008 calendar year? That was the only issue that was before the hearing officer. That was the only issue that was before the district court. There were no procedural issues. There was no issue about whether the IEP was an appropriate IEP or properly crafted. There was no issue whether or not it was properly implemented. The only issue was, did it provide faith to the student? And I think the district court, in looking at it... The administrative hearing officer said no. Well, the administrative hearing officer said on three of the goals... Right. ...there wasn't sufficient educational benefit. Primarily because you were relying on a 2006 IEP. The 2006 IEP established the least restrictive environment, the setting for the student in the regular classroom, and the services that were provided. But he's entitled to an IEP every year. Well, he had an IEP every single year. A state put IEP that the district had no ability to modify without the consent and agreement of the parents. But the school district has an obligation. If it can't get a consent of a parent, an IEP, it has an obligation to file for due process, and that's how it implements an IEP. But it doesn't diminish the school district's obligation to have a new IEP for every year. The district doesn't have an obligation when the matter is in state put to file a due process hearing. Oh, you're mistaken about that. Of course. If the state put just keeps the kid in place while the matters are litigated. But if you then get into a new year, there's a new obligation to provide an updated IEP because a child grows, a child learns new things, a student advances or doesn't advance, and then you have to do a new assessment in your IEP. And if you can't get agreement, you just have to go force agreement by moving for due process. The school district will move for due process to try to force a new IEP. My understanding of the IEP, Your Honor, of the state put situation, is once it's invoked, until there is an ultimate end of litigation, until there's been an ultimate determination, that IEP continues to remain in force unless there's some agreement. But you could predict yourself, because you did in 2008 convene an IEP process, right? Correct. So it's not that you said, oh, well, if we've got a state put in place, we can't work on it. But you didn't succeed in coming up with a new IEP. I mean, the fact that it was a state put didn't prevent you from working on a new IEP. No. And, in fact, that's what is required under the statute, is that there be an annual review. So what do you think is the school district's obligation if you can't reach agreement with the parents? I'm sorry, Your Honor, could you ask that again? What do you think is the school district's obligation if you can't reach agreement with the parents? If the parents have invoked state put, the school district doesn't have any alternative but to… Even if litigation takes two and three years. Even if litigation takes two or three years. So you're trying to educate a child based upon an IEP that's for somebody who's in the second grade and who's in the fourth grade? No, as a practical matter. I mean, it doesn't make any sense. Well, as a practical matter, it's not as simple as you've described it. I didn't mean it to be simple. I'm just saying. I mean, essentially that's what you're saying. How long has this litigation been ongoing? Since 2008. So what happens is what happened in this situation, as the child moves from second grade to third grade, the child continues to participate in the curriculum and all the same sorts of studies and things that the other children are participating in is provided access to that educational environment because of the terms of his IEP, even though it's in state put. The IEP describes the things that are unique needs for the child, the things that the district is required to provide, and the services that they provide. And that was what was provided here. You don't think that changes over time like Judge Kaczynski suggested? I think that the requirement to review annually and to propose a better or a new IEP, a modified IEP, that clearly is the obligation of the school district, and that is what the school district did in this case. When the parent says, no, I won't agree to that, I want it to remain in state put, that is functionally then what occurs. It's an automatic stay that requires the district to continue to provide services under that IEP until the litigation is resolved. The tradeoff really is the parents want the child to remain in the last agreed placement, the last agreed program and services, in order to ensure that nothing is going to change from what they had agreed upon, but then they can continue that for as long as litigation occurs. And in this case, it's taken to the Ninth Circuit. Sometimes, you know, if parents don't continue to litigate, the IEP then dissolves of its own accord because there's no further litigation that takes place. That didn't happen in this case. The only other thing I would like to say is that the district court, when it took the record, when it took this case, it properly evaluated what it was that was at issue here, and that was whether or not the student received FAPE. The district court was at pains to review the entire record. It made procedural findings, and it ultimately determined that the student was provided FAPE by the school district, and that, we submit, is a correct legal determination and one that should be affirmed. Why shouldn't we side with a hearing officer who was much closer to the events, actually heard the witnesses? I thought the hearing officer's opinion was pretty persuasive. Well, the court, like the district court, as I understand it, has the obligation to review the entire record and ultimately make determinations of fact and law. The fact questions that were decided by the district court I think is entitled to more deference because nobody has challenged the fact findings made by the district court as being clearly erroneous. But I think that this court can review the entire record and determine on its own whether the district court was correct in the legal decision that it made based upon the facts. Do you think he gave proper deference to the IHRA's opinion? I think that he did, Your Honor. He's not entitled to make a complete, you know, you don't just take, it's not pure de novo. No, I understand. You have to look at the... And I think that the judge, I think that the district court judge expressly said that this was a complete factual record upon which he could make the determinations. He did make fact findings on the procedural aspects and then he made a legal conclusion, which I submit was a proper legal conclusion, that the district did provide faith, did offer faith to the student. You know, he made a comment that kind of bothered me, which was that, you know, all the problems here stem from the parents being so litigious or so confrontational with the district. He actually didn't say that. He sort of suggested that. Well, he said... He put all the fault on the parents. He actually didn't do that either. That's what I read. The way I read it, that's what I took away from it. He said that there were disagreements on both sides. There was fault to be provided on both sides. But if he had to make a determination on that, he would find in favor of the district. He would put the blame on the parents. Yeah, that as between the two, it was not the district that impacted the faith that the child received. It was the parents. Okay. So how do you disagree with Judge Paz? It sounds to me like you're agreeing. You say, yeah, the district judge didn't say that. You've just gone over what the district judge said, didn't you? It sounds like he said exactly that. Well, I think... You just thought you'd drive the point home by making sure we had... Yeah. Unless the Court has any other questions, I have nothing further. Okay, thank you. Thank you. Would you like to take a minute for rebuttal? Just a minute. I'll stick to that, Your Honor. Thank you. I just wanted to make two quick points. First, Your Honor, the statute is clear that the school district has more than the responsibility to simply propose a new IEP. Section 1414d2a says that the school district must have in effect an IEP at the beginning of each school year that meets certain criteria, two of which are to have the present levels of educational performance of the student and to have up-to-date annual achievable goals of the student. So the school district must do more than simply propose but must have it in effect. Second, and more importantly, even if this Court entirely ignores the procedural issues or finds them waived, this Court should find in favor of MP because he has established a violation under either of the two substantive tests put forth by this Court. Thank you, Your Honor. Do you have a view on this mysterious interlineation? Do you know of it? Yes, Your Honor. Is there such a document? Yes, Your Honor. You didn't put it in your excerpts of record either, right? No, Your Honor. We did not include either the complaint or the interlineation in our record. And the reason for that, Your Honor, is because it has been our position that the scope of the hearing is confined not solely, first of all, the scope of the hearing is not solely confined by the complaint itself, but also by the pre-conference hearing and the discussion, and that is in the record. And second, Your Honor, in this case, the interlineation only struck out the issues related to 2007. This is what I was so inarticulately attempting to explain at the outset, which is that what the parent proceeding pro se sought to eliminate was issues related to 2007. She sought to put the issues solely about 2008 into issue in this particular complaint. And that was what the division between due process hearing 09-07, 09-08, 09-09, it was a temporal limitation, not on substance versus procedure. Okay. Thank you, Your Honor. Thank you. The case is submitted.
judges: Burns, Kozinski, Paez